(April 3, 1916.)

STATE ex rel. JOSEPH H. PETERSON, Attorney General,.
    Plaintiff, v. R. H. DUNLAP, Probate Judge of Ada
    County, MARY W. HARRIMAN, Widow and Execu-
    trix of the Will of the Late E. H. HARRIMAN, and
    the OREGON SHORT LINE RAILROAD COMPANY,.
    Defendants.

[156 Pac. 1141.]

INHERITANCE TAX — PROBATE COURTS — JURISDICTION—CONSTITUTIONAL.
    LAW—SITUS OF PERSONAL PROPERTY—CORPORATE SHARES.

1. Where there is want of jurisdiction of the subject matter, a.
judgment is void, and consent of the parties cannot impart validity
to it.

2. The jurisdiction of the probate court is limited and defined by
sec. 21, art. 5, of the constitution to matters of probate, settlement
of estates of deceased persons, and appointment of guardians; also,.
jurisdiction to hear and determine civil cases wherein the debt or
damage claimed does not exceed the sum of $500, exclusive of in-
terest, and concurrent jurisdiction with justices of the peace in.
criminal cases.

3. It was not the intention of the legislature to attempt to pro-
vide for the appointment of an appraiser under the circumstances.
disclosed by this application, but it authorized such appointment,
by the probate court, only in cases where proceedings to probate
an estate are pending, or where the decedent has left an estate.
subject to probate in Idaho.

4. Since no proceeding is pending to probate the estate of the·
late E. H. Harriman, and since he does not appear to have left an
estate in Idaho subject to settlement under our laws, and since the·
proceeding commenced in the probate court does not involve the
appointment of a guardian, nor in any particular come within the
prescribed limits of the jurisdiction of the probate court as defined.
by sec. 21, art. 5, of the constitution, that court is without juris-
diction to entertain such proceeding or to enter the judgment.
desired by plaintiff.

5. Sec. 1873, Rev. Codes, so far as it applies to the facts pre-
sented here, limits the right to collect transfer tax upon inheritance·
to cases where property shall pass by will or by the intestate laws.
of this state, from any person who may die seised or possessed of:

the same while a resident of Idaho, or if such decedent was a nonresident at the time of his death, which property, or some part thereof, shall be within this state.

6. The words "property which shall pass by will" are limited by the words "or the intestate laws of this state," and the tax is not payable because the owner of the property died testate if it would not be payable had he died intestate. The right to collect the tax, in either event, is dependent upon the jurisdiction of the state over the transfer.

7. While the situs of property is a controlling factor when the right to collect a property tax is under consideration, it must be remembered that an inheritance or succession tax is not a tax upon property, but is a bonus in the nature of an excise or duty exacted by the state for the privilege granted by its laws of inheriting or succeeding to property on the death of the owner, and that in considering whether or not such a bonus is due, the location of the property is material only when it invests the state with jurisdiction to control the right to make the transfer by inheritance or succession.

8. Shares of stock in a corporation are personal property and descend according to the laws of the state which was the domicile of the owner at the time of his death, and the certificates of shares of corporate stock, which constitute evidence of ownership, are transferred according to the laws of the state wherein the corporation was organized.

[As to avoidance of judgment where court acted without having jurisdiction, see note in 29 Am. St. 78.]

APPLICATION for writ of review. Judgment for defendants.

J. H. Peterson, Atty. Genl., T. C. Coffin, E. G. Davis and Herbert Wing, Assts., for Plaintiff.

"The tax is not upon the property in the ordinary sense of the term, but upon the right to dispose of it, and it is not until it has yielded its contribution to the state that it becomes the property of the legatee." (*United States v. Perkins,* 163 U. S. 628, 16 Sup. Ct. 1073, 41 L. ed. 287; *Mager v. Grima,* 8 How. 490–493, 12 L. ed. 1168; *State v. Dalrymple,* 70 Md. 294, 17 Atl. 82, 3 L. R. A. 372; *Greves v. Shaw,* 173 Mass. 205, 53 N. E. 372; *Dixon v. Russell,* 79 N. J. L. 490, 76 Atl. 982; *In re Stixrud's Estate,* 58 Wash. 339, Ann. Cas. 1912A, 856, 109 Pac. 343, 33 L. R. A., N. S., 632; *In re Plummer,* 30

Misc. Rep. 19, 62 N. Y. Supp. 1024; *Plummer v. Coler*, 178
U. S. 115, 20 Sup. Ct. 829, 44 L. ed. 998; *State ex rel. Garth
v. Switzler*, 143 Mo. 287, 65 Am. St. 653, 45 S. W. 245, 40
L. R. A. 280; *Pullen v. Wake County Commrs.*, 66 N. C. 361;
*Gelsthorpe v. Furnell*, 20 Mont. 299, 51 Pac. 267, 39 L. R. A.
170; *Succession of Westfeldt*, 122 La. 836, 48 So. 281.)

The inheritance tax laws have no relation to the general
revenue laws, and constitutional provisions applicable to the
levying of the latter cannot be construed as a limitation of
the power to levy the former. (*People v. Griffith*, 245 Ill.
532, 92 N. E. 313; *In re House Bill No. 122*, 23 Colo. 492, 48
Pac. 535; *Union Trust Co. v. Wayne Probate Judge*, 125
Mich. 487, 84 N. W. 1101; *In re Knoedler's Estate*, 140
N. Y. 377, 35 N. E. 601; *Nunnemacher v. State*, 129 Wis.
190, 108 N. W. 627, 9 Ann. Cas. 711, 9 L. R. A., N. S., 121;
*State v. Ferris*, 53 Ohio St. 314, 41 N. E. 579, 30 L. R. A. 218;
*State v. Hamlin*, 86 Me. 495, 41 Am. St. 569, 30 Atl. 76, 25
L. R. A. 632.)

A review of the authorities shows no ground for believing
that the tax we are seeking to collect would be construed by
the supreme court of the United States as in violation of the
federal constitution. (*In re Blackstone's Estate*, 171 N. Y.
682, 64 N. E. 1118; *Blackstone v. Miller*, 188 U. S. 189, 23
Sup. Ct. 277, 47 L. ed. 439; *State ex rel. Fath v. Henderson*,
160 Mo. 190, 60 S. W. 1093; *Thompson v. Kidder*, 74 N. H.
89, 65 Atl. 392, 12 Ann. Cas. 948; *In re Fox's Estate*, 154
Mich. 5, 117 N. W. 558; *Beals v. State*, 139 Wis. 544, 121
N. W. 347; *Walker v. People*, 192 Ill. 106, 61 N. E. 489; *State
v. Guilbert*, 70 Ohio St. 229, 71 N. E. 636, 1 Ann. Cas. 25;
*Gelsthorpe v. Furnell*, 20 Mont. 299, 51 Pac. 267, 39 L. R. A.
170; *In re Campbell's Estate*, 143 Cal. 623, 77 Pac. 674;
*Campbell v. California*, 200 U. S. 87, 26 Sup. Ct. 182, 50 L. ed.
382; *Keeney v. Comptroller*, 222 U. S. 525, 32 Sup. Ct. 105,
56 L. ed. 299, 38 L. R. A., N. S., 1139.)

The fact that two states, dealing each with its own law
of succession, both of which must be invoked to secure rights,
have taxed the rights which they respectively confer, gives
no cause for complaint on constitutional grounds. (*In re*

*Hartman's Estate,* 70 N. J. Eq. 664, 62 Atl. 560; *In re Stanton's Estate,* 142 Mich. 491, 105 N. W. 1122; *Frothingham v. Shaw,* 175 Mass. 59, 78 Am. St. 475, 55 N. E. 623; *Mann v. Carter,* 74 N. H. 345, 68 Atl. 130, 15 L. R. A., N. S., 150; *People v. Union Trust Co.,* 255 Ill. 168, Ann. Cas. 1913D, 514, 99 N. E. 377, L. R. A. 1915D, 450; *People v. Palmer's Estate,* 25 Colo. App. 450, 139 Pac. 554; *State v. Probate Court of Ramsey County,* 124 Minn. 508, Ann. Cas. 1915B, 861, 145 N. W. 390, 50 L. R. A., N. S., 262.)

Where a legislature has attempted to tax property or an interest in property, under its power to impose transfer, inheritance or succession taxes, the only question which arises in a particular case is as to whether the property or the interest in property is within the jurisdiction of the state. The situs, for purposes of taxation, of an interest in property is the same as that of the property in which the interest exists. (*Nielson v. Russell,* 76 N. J. L. 27, 69 Atl. 476; *Mann v. Carter,* 74 N. H. 345, 68 Atl. 130, 15 L. R. A., N. S., 150; *Gardiner v. Carter,* 74 N. H. 507, 69 Atl. 939; *In re Delano's Estate,* 74 N. J. Eq. 365, 69 Atl. 482; *People v. Griffith,* 245 Ill. 532, 92 N. E. 313; *In re Bronson's Estate,* 150 N. Y. 1, 55 Am. St. 632, 44 N. E. 707, 34 L. R. A. 238; *In re Palmer's Estate,* 183 N. Y. 238, 76 N. E. 16; *In re Clinch,* 99 App. Div. 298, 90 N. Y. Supp. 923; *Appeal of Gallup,* 76 Conn. 617, 57 Atl. 699; *Kingsbury v. Chapin,* 196 Mass. 533, 82 N. E. 700, 13 Ann. Cas. 738; *Metropolitan Life Ins. Co. v. New Orleans,* 205 U. S. 395, 27 Sup. Ct. 499, 51 L. ed. 853.)

Interests in property substantially similar in all respects to the interest owned by the late E. H. Harriman, at the time of his death, in the property of the Oregon Short Line Railroad Company in Idaho, have been made the subject of transfer, inheritance or succession taxes in other states, and the laws imposing such taxes have been upheld by their courts of last resort. (*In re Willmer's Estate,* 153 App. Div. 804, 138 N. Y. Supp. 649; *Greves v. Shaw,* 173 Mass. 205, 53 N. E. 372; *Callahan v. Woodbridge,* 171 Mass. 595, 51 N. E. 176; *Tappan v. Merchants' Nat. Bank,* 19 Wall. 490, 22 L. ed. 189; *First Nat. Bank v. Smith,* 65 Ill. 44, 45; *South Nashville St.*

*R. Co. v. Morrow,* 87 Tenn. 406, 11 S. W. 348, 2 L. R. A. 853; *Peabody v. Treasurer, etc.,* 215 Mass. 129, 102 N. E. 435; *In re Cushing's Estate,* 40 Misc. Rep. 505, 82 N. Y. Supp. 795; *In re Rogers' Estate,* 149 Mich. 305, 119 Am. St. 677, 112 N. W. 931, 11 L. R. A., N. S., 1134; *In re·Jones' Estate,* 172 N. Y. 575, 65 N. E. 570, 60 L. R. A. 476.)

The interpretation which we seek to place upon the words of our statute is clearly authorized by the decisions of courts construing statutes substantially similar to our own. (*In re Culver's Estate,* 145 Iowa, 1, 123 N. W. 743, 25 L. R. A., N. S., 384; *In re Enston,* 19 Abb. N. C. (N. Y.) 227; *In re Stanton's Estate,* 142 Mich. 491, 105 N. W. 1122; *Kingsbury v. Chapin,* 196 Mass. 533, 82 N. E. 700, 13 Ann. Cas. 738; *Hooper v. Shaw,* 176 Mass. 190, 57 N. E. 361.) A shareholder in a corporation is an owner of an "interest in such property" within the meaning of this term as used in the statute of this state authorizing the collection of transfer, inheritance or succession taxes. (*Plimpton v. Bigelow,* 93 N. Y. 592; *Fisher v. President etc. of Essex Bank,* 5 Gray (Mass.), 373; *In re Fitch's Estate,* 160 N. Y. 87, 54 N. E. 701; *Field v. Pierce,* 102 Mass. 253, 261.)

If a tax is owing to the state of Idaho from the Harriman estate, it was the duty of the administrator of the estate to comply with the laws of Idaho, even to the extent, if necessary, of offering the will for probate in this jurisdiction, and to provide for the payment of the tax before proceeding to settle the estate. The mere fact that this was not done can in no wise affect the right of the state of Idaho to demand the payment of the tax. (*Greves v. Shaw,* 173 Mass. 205, 53 N. E. 372.)

Hawley & Hawley, for Defendants Dunlap and Mary W. Harriman.

"An inheritance tax is a special and not a general tax and a statute imposing it is construed strictly against the government and in favor of the taxpayer." (*People v. Koenig,* 37 Colo. 283, 85 Pac. 1129, 11 Ann. Cas. 140; *In re Vassar,* 127

N. Y. 112, 27 N. E. 394, at 397; *In re Harbeck,* 161 N. Y. 211, 55 N. E. 850.)

The state cannot lawfully tax the transfer of personal property of a decedent without its jurisdiction, when decedent was not a citizen of this state. An attempt to so tax property is in violation of the fourteenth amendment to the constitution of the United States. (*Louisville & J. Ferry Co. v. Kentucky,* 188 U. S. 385, 23 Sup. Ct. 463, 47 L. ed. 513; *Delaware L. & W. R. Co. v. Pennsylvania,* 198 U. S. 341, 25 Sup. Ct. 669, 49 L. ed. 1077; *Union Refrigerator Co. v. Kentucky,* 199 U. S. 194, 26 Sup. Ct. 36, 50 L. ed. 150, 4 Ann. Cas. 493; *Buck v. Beach,* 206 U. S. 392, 27 Sup. Ct. 712, 51 L. ed. 1106, 11 Ann. Cas. 732; *Met. Ins. Co. v. New Orleans,* 205 U. S. 399, 27 Sup. Ct. 499, 51 L. ed. 853.)

Shares of stock in a corporation are personal property, and their ownership does not vest in the owner an interest in real estate of the corporation. (Sec. 2747, Rev. Codes; *Watson v. Molden,* 10 Ida. 570, 79 Pac. 503; Thompson on Corporations, 2d ed., sec. 3465; *Tregear v. Etiwanda Water Co.,* 76 Cal. 537, 9 Am. St. 245, 18 Pac. 658; *Mattingly v. Roach,* 84 Cal. 207, 23 Pac. 1117; *Ankeny v. Blakley,* 44 Or. 78, 74 Pac. 485; *Richardson v. Longmont Supply Ditch Co.,* 19 Colo. App. 483, 76 Pac. 546; 7 Ruling Case Law, sec. 166.)

But the title is in the artificial body, which, in contemplation of law, is distinct from the members of the corporation. (Smith on Personal Property, 44, 45; Angell & Ames on Corporations, secs. 110, 111.)

The property upon which it is sought to impose taxes must be within the sphere of the territorial jurisdiction of the taxing government, and where there is no jurisdiction either as to persons or property, the imposition of a tax will be *ultra vires* and void. (*St. Louis v. Wiggins Ferry Co.,* 11 Wall. 425, 20 L. ed. 192; *Dallinger v. Rapello,* 14 Fed. 32; *Yost v. Lake Erie Trans. Co.,* 112 Fed. 746, 50 C. C. A. 511.)

A tax cannot be levied upon intangible, incorporeal personal property unless it is held or owned within the state. (*Buck v. Miller,* 147 Ind. 586, 62 Am. St. 436, 45 N. E. 647, 47 N. E. 8, 37 L. R. A. 384.)

As a general rule, personal property for the purposes of taxation has its situs at the place of the owner's domicile, and cannot legally be assessed in any other place than where he resides, although the property itself may be elsewhere. But it is competent for the legislature to assign to tangible personal property a situs of its own independent of the place of the owner's domicile. (37 Cyc. 952, and authorities cited in notes 69 and 70.)

Shares of stock in a corporation are also the shares of its stockholder, wherever he may have his domicile, and, if taxed to him as his personal estate, can only be so taxed by the juris-diction to which his person is subject, whether the corporation be foreign or domestic. (*State v. Branin,* 23 N. J. L. 484; *Newark City Bank v. Assessor,* 30 N. J. L. 13; *Great Barrington v. Berkshire County Commrs.,* 16 Pick. (Mass.) 572; *Whitesell v. Northampton County,* 49 Pa. St. 526; *Griffith v. Watson,* 19 Kan. 23, 26; *Griffith v. Carter,* 8 Kan. 565; *Seward v. Rising Sun,* 79 Ind. 351, 353; *Conwell v. President, etc. of Connersville,* 15 Ind. 150; *Bradley v. Bauder,* 36 Ohio St. 28, 36, 38 Am. Rep. 547; 37 Cyc. of Law & Proc. 1562, and authorities cited in note 18.)

An inheritance tax is a bonus in the nature of an excise or duty exacted by the laws of the state for the privilege granted by its laws of succeeding to property upon the death of its owner. (*Scholey v. Rew,* 23 Wall. 331, 23 L. ed. 99; *Knowlton v. Moore,* 178 U. S. 41, 20 Sup. Ct. 747, 44 L. ed. 969; *Nettleton's Appeal,* 76 Conn. 235, 56 Atl. 565; *State v. Alston,* 94 Tenn. 674, 30 S. W. 750, 28 L. R. A. 178; *In re McKennan's Estate,* 25 S. D. 369, 126 N. W. 611, 33 L. R. A., N. S., 606; *English v. Crenshaw,* 127 Am. St. 1096, note.)

It cannot be successfully contended that the legislature has constitutional authority to impose upon the probate judge of a county the enforcement of the payment of an inheritance tax upon estates not being probated in his county. (*Dewey v. Schreiber Implement Co.,* 12 Ida. 280, 85 Pac. 921.)

George H. Smith and H. B. Thompson, for O. S. L. Ry. Co.

The theory of an inheritance tax is that it is not one on property, but upon the right to succession. (*Bullen's Estate,*

143 Wis. 512, 139 Am. St. 1114, 128 N. W. 109; *State v. Hamlin,* 86 Me. 495, 41 Am. St. 569, 30 Atl. 76, 25 L. R. A. 632; *Sherman v. State (In re McKennan),* 25 S. D. 369, 126 N. W. 611, 33 L. R. A., N. S., 606; *Magoun v. Illinois Trust & Savings Bank,* 170 U. S. 283, 18 Sup. Ct. 594, 42 L. ed. 1037.)

Since, therefore, the tax in its nature is merely one which the state has jurisdiction to impose as a condition to its passing title to property from the deceased to the living, instead of taking it to itself, the only question to be determined appears to be whether at the time Mr. Harriman died he left property within the state of Idaho, title to which was in him, and to the devolution or succession of which the state may lend its assent or the process of its probate or other courts, or withhold.    (*Neilson v. Russell,* 76 N. J. L. 655, 131 Am. St. 673, 71 Atl. 286, 19 L. R. A., N. S., 887, 891.)

This court has directly passed upon the question as to what property is affected by the statute invoked by the petitioner. (*Kohny v. Dunbar,* 21 Ida. 258, Ann. Cas. 1913D, 492, 121 Pac. 544, 39 L. R. A., N. S., 1107.)

The capital stock of a foreign corporation owned by a deceased nonresident at the time of his death is not subject to transfer tax, but, on the contrary, the courts generally hold that the transfer tax is collectible at the domicile of the corporation, or in the state under whose laws it is created, and that irrespective of whether the deceased is a resident or a nonresident of the state.    (*In re James,* 144 N. Y. 6, 38 N. E. 961; *In re Branson's Estate,* 150 N. Y. 1, 55 Am. St. 632, 44 N. E. 707, 34 L. R. A. 238; *Greves v. Shaw,* 173 Mass. 205, 53 N. E. 372.)

"Before one can be subjected to the burdens of a law providing for special taxation either himself or his property must be clearly brought within its terms." (*In re Enston's Will (People v. Sherwood),* 113 N. Y. 174, 21 N. E. 87, 3 L. R. A. 464.)

There is no liability created by statute against the property of the railroad corporation.    (7 R. C. L., sec. 166.)

The legislature was without constitutional authority to make the probate judge a sort of a commissioner for the en-

forcement of payment of inheritance taxes, with power to conduct inquiries concerning the property of persons whose estates were not being probated. (*Dewey v. Schreiber Implement Co.,* 12 Ida. 280, 85 Pac. 921; *Stewart v. Lohr,* 1 Wash. St. 341, 22 Am. St. 150, 25 Pac. 457; *Smith v. Westerfield,* 88 Cal. 374, 26 Pac. 206; *In re Haas' Estate,* 97 Cal. 232, 31 Pac. 893, 32 Pac. 327; *Buckley v. Superior Court,* 102 Cal. 6, 41 Am. St. 135, 36 Pac. 360; *In re Wolford,* 10 Kan. App. 283, 62 Pac. 731; *In re Currier's Estate,* 19 Colo. App. 245, 74 Pac. 340; *Falke v. Terry,* 32 Colo. 85, 75 Pac. 425; *Leach v. Misters,* 13 Wyo. 239, 79 Pac. 28; *Meredith v. Scallion,* 51 Ark. 361, 11 S. W. 516, 3 L. R. A. 812–815.)

MORGAN, J.—This is a special proceeding commenced in this court by the state of Idaho ex rel. Joseph H. Peterson, attorney general, against R. H. Dunlap, as probate judge of Ada county, Mary W. Harriman, in her individual capacity and as executrix of the last will and testament of E. H. Harriman, deceased, and the Oregon Short Line Railroad Company, to procure the issuance of a writ of mandate commanding the probate judge to enter judgment on the pleadings and to proceed to appoint a competent person to appraise the property of the Oregon Short Line Railroad Company within the state of Idaho as the same existed on September 9, 1909, and particularly the interest therein of E. H. Harriman, according to a motion made and overruled in a proceeding initiated by the Idaho Tax Commission and pending in the probate court to collect a tax upon the transfer of the interest in the property of the railroad company situated within the state of Idaho, and held by Mr. Harriman at the time of his death.

The material facts disclosed by the record before us, which contains copies of all pleadings and papers filed in the probate court, are that E. H. Harriman died on September 9, 1909, leaving his entire estate, by will, to Mary W. Harriman, his widow; that at the time of his death he was, and for more than five years prior thereto had been, a citizen and resident of the state of New York; that neither E. H. Harriman nor Mary W. Harriman has ever been a citizen or resident of

Idaho; that the Oregon Short Line Railroad Company is, and on September 9, 1909, was, a corporation organized and existing under and by virtue of the laws of the state of Utah, and is, and was, the owner of a large amount of real estate and personal property within the state of Idaho, and that the Union Pacific Railroad Company is, and on September 9, 1909, was, a corporation organized and existing under and by virtue of the laws of the state of Utah and owned, not as a holding corporation, but absolutely, the entire capital stock of the Oregon Short Line Railroad Company; that at the time of his death E. H. Harriman was the owner of certain shares of stock, both common and preferred, of the Union Pacific Railroad Company, which passed to Mary W. Harriman by his will, but that he was not the owner of any property within the state of Idaho other than his interest in the holdings of the Oregon Short Line Railroad Company, as evidenced by his certificates of stock in the Union Pacific Railroad Company. It further appears that no proceedings have ever been commenced under the laws of the state of Idaho to probate the will, or the estate, or to affect the transfer of the shares of stock in question, and that a transfer tax thereon has been exacted by and paid to the states of New York and Utah.

The answers of Mrs. Harriman and of the Oregon Short Line Railroad Company, filed in the probate court, admitted the material facts relied upon by plaintiff, and a motion for judgment on the pleadings and for the appointment of a suitable person to appraise the property was made and was by the court overruled, whereupon this proceeding was commenced and an alternative writ of mandate was issued.

At the outset of the consideration of this case two jurisdictional questions arose. First, has this court jurisdiction, by mandate, to compel an inferior court to enter a particular order, or judgment, or to rectify an erroneous one? Second, has the probate court jurisdiction to enter the judgment which it is sought in this proceeding to require it to enter?

In order to eliminate the complication presented by the question first above stated the parties have stipulated that the court may regard the petition filed herein as an application

for, and the answer as a return to, a writ of review, and may proceed herein as if the procedure on *certiorari*, or writ of review, had been adopted in the first instance. This proceeding will be treated in conformity to the stipulation.

The second question goes to the jurisdiction of the probate court over the subject matter of the proceeding, the appointment of a suitable person to appraise the property, and jurisdiction, in that particular, cannot be conferred by stipulation. Where there is want of jurisdiction of the subject matter a judgment is void, and consent of the parties cannot impart validity to it. (7 R. C. L. 1039.) The jurisdiction of the probate court is limited and defined by sec. 21, art. 5, of the constitution as follows: "The probate courts shall be courts of record, and shall have original jurisdiction in all matters of probate, settlement of estates of deceased persons, and appointment of guardians; also, jurisdiction to hear and determine all civil cases wherein the debt or damage claimed, does not exceed the sum of five hundred dollars, exclusive of interest and concurrent jurisdiction with justices of the peace in criminal cases."

Construing the foregoing section this court, in *Dewey v. Schreiber Implement Co.*, 12 Ida. 280, 85 Pac. 921, said: "We do not think that the framers of the constitution intended to grant equity jurisdiction to probate courts outside of whatever equity jurisdiction they may have in all matters of probate, settlement of estates of deceased persons and appointment of guardians." And in case of *Estate of McVay* (on rehearing), 14 Ida. 64, 93 Pac. 31, it is said: "An examination of secs. 20 and 21, art. 5, of the constitution, discloses at once the fact that the framers of that instrument saw fit to classify 'matters of probate, settlement of estates of deceased persons and appointment of guardians' as separate, distinct and aside from 'cases at law and in equity,' over which they gave the district court 'original jurisdiction.'" *Idaho Trust Co. v. Miller*, 16 Ida. 308, 102 Pac. 360, was a case wherein a claim had been presented to the administrator of an estate and disallowed; action was thereafter commenced in the district court to recover $1,077.91, being the amount claimed to

be due, and the contention was made that the probate court has exclusive original jurisdiction in all probate matters, and for that reason the district court was without jurisdiction to try the action. Disposing of that contention this court decided, as follows: "Under the provisions of sec. 20, art. 5, of the constitution of Idaho, the district court has original jurisdiction in all cases both in law and equity, but does not have original jurisdiction in matters of probate and settlement of estates of deceased persons, as by the provisions of section 21, article 5, of the constitution, original jurisdiction of those matters has been given to the probate court. Those proceedings are not 'cases' in law or equity, as said term is used in said sec. 20 of the constitution. Under the provisions of said sec. 20, the district court had original jurisdiction to try the case at bar and the probate court had no jurisdiction whatever to try it."

We are convinced from an examination of the statute that it was not the intention of the legislature to attempt to provide for the appointment of an appraiser, under the circumstances disclosed by this application, but that it authorized such appointment, by the probate court, only in cases where proceedings to probate an estate are pending, or where the decedent has left an estate subject to probate in Idaho.

It is provided in sec. 1886, Rev. Codes, as follows:

"When the value of any inheritance, devise, bequest or other interest subject to the payment of said tax is uncertain, the probate court in which the probate proceedings are pending, on the application of any interested party, or on its own motion, shall appoint some competent person to appraise, as often as and whenever occasion may require, whose duty it shall be forthwith to give such notice, by mail, to all persons known to have or claim an interest in such property, and to. such persons as the court may by order direct, of the time and place at which he will appraise such property, and at such time and place to appraise the same and make a report thereof, in writing, to said court, together with such other facts in relation thereto as said court may by order require to be filed with the clerk of said court; and from this report

the said court shall, by order, forthwith assess and fix the market value of all inheritances, devises, bequests or other interests, and the tax to which the same is liable, and shall immediately cause notice thereof to be given, by mail, to all parties known to be interested therein. . . . . ''

Since no proceeding is pending in Ada county to probate the estate of the late E. H. Harriman, and since he does not appear to have left an estate in Idaho subject to settlement under our laws, and since the proceeding commenced in the probate court does not involve the appointment of a guardian, nor in any particular come within the prescribed limits of the jurisdiction of that court as defined by sec. 21, art. 5, of the constitution, we conclude that said court was without jurisdiction to entertain such proceeding or to enter the judgment desired by plaintiff.

This case has been very fully briefed and ably presented in oral arguments by counsel for both parties, who desire a decision upon the merits, and, while a majority of the court has reached the conclusion that the probate court is without jurisdiction to enter the judgment desired by plaintiff we have concluded, because the question is of considerable public importance, to set forth our views upon the right of the state to exact an inheritance tax under the laws of Idaho applied to the facts disclosed by the record.

The facts have been heretofore stated. The law pursuant to which this tax is sought to be collected is to be found in sec. 1873, Rev. Codes, which is as follows: ''All property which shall pass, by will or by the intestate laws of this state, from any person who may die seised or possessed of the same while a resident of this state, or if such decedent was not a resident of this state at the time of death, which property, or any part thereof, shall be within this state, or any interest therein, or income therefrom, which shall be transferred by deed, grant, sale or gift, made in contemplation of the death of the grantor, vendor or bargainor, or intended to take effect in possession or enjoyment after such death, to any person or persons, or to any body politic or corporate, in trust, or otherwise, or by reason whereof any person or body politic

or corporate shall become beneficially entitled, in possession or expectancy, to any property, or to the income thereof, shall be and is subject to a tax hereinafter provided for, to be paid to the treasurer of the proper county, as hereinafter directed for the benefit of the general fund of this state, to be used for all the purposes for which said fund is available. And the county treasurer shall, upon the receipt of said tax, pay the same to the state treasurer and take duplicate receipts thereof, one of which the county treasurer shall retain, and transmit the other to the state auditor, and receive from him credit for the amount thereof on his account; and such tax shall be and remain a lien upon the property passed or transferred until paid, and the person to whom the property passes or is transferred, and all administrators, executors and trustees of every estate so transferred or passed, shall be liable for any and all such taxes until the same shall have been paid as hereinafter directed. The tax so imposed shall be upon the market value of such property at the rates hereinafter prescribed, and only upon the excess over the exemptions hereinafter granted.''

It will be observed that the right to collect transfer tax upon inheritance is limited to cases where property ''shall pass, by will or by the intestate laws of this state, from any person who may die seised or possessed of the same while a resident of this state, or if such decedent was not a resident of this state at the time of his death, which property, or any part thereof, shall be within this state. . . . . '' Then follows a provision governing cases where property has been transferred by deed, grant, sale or gift made in contemplation of death, and which can have no application to the facts in this case.

The stock in the Union Pacific Railroad Company passed, not by the intestate laws of this state, but by will. However, in order to enable Idaho to exact payment of the tax the property must have been so situated that in the absence of a will it would have passed according to our intestate laws. The words ''property which shall pass by will'' are limited by the words ''or the intestate laws of this state,'' and the

tax is not payable because the owner of the property died testate if it would not be payable had he died intestate. The right to exact the tax, in either event, is dependent upon the jurisdiction of the state over the transfer.

Construing sec. 29 of the War Revenue Act of June 13, 1898, providing for inheritance tax upon personal property passing "either by will or by the intestate laws of any state or territory," it is held in case of *Eidman v. Martinez*, 184 U. S. 578, 22 Sup. Ct. 515, 46 L. ed. 697, that the words "passing by will" are limited by the subsequent words "or by the intestate laws of any state or territory."

In delivering the opinion of the court in that case, Mr. Justice Brown said: "The question involved in this case, however, arose under the act of June 30, 1864 (13 Stat. at L. 285, chap. 173), before Mr. Justice Gray of this court, while holding the circuit court for Massachusetts, in *United States v. Hunnewell*, 13 Fed. 617. Section 124 of that act imposed a duty on legacies or distributive shares arising from personal property passing from any person possessed of such property, either by will, or by the intestate laws of any state or territory. The action was brought to recover the tax upon American securities bequeathed by a French citizen domiciled in France to a son who was also domiciled there. The will was executed in conformity with the French law and was duly proved there, though a local executor was appointed by the probate court in Boston to transfer to the legatee the securities in question. It was held that sec. 124 did not make the duty payable when the person possessed of such property died testate if it would not be payable if such person died intestate; and as if the deceased had died intestate her son would not have taken a distributive share by the intestate laws of any state or territory, his rights were the same if he took by will. In other words, that the words 'either by will or by the intestate laws of any state or territory' must be construed together, and would apply only to wills executed within any state or territory of the United States."

In a note to the opinion in case of *Sherman v. State (In re McKennan's Estate)*, 25 S. D. 369, 126 N. W. 611, decided

by the supreme court of South Dakota and reported in 33 L. R. A., N. S., 606, a great number of authorities are cited in support of the doctrine that an inheritance tax is a tax upon the right to transfer property by the testator or intestate and to receive it by the heir, devisee or legatee and not upon the property itself. Therein it is said: ''The authorities are unanimous upon the proposition that an inheritance tax is neither a property nor a personal tax, and in all the cases herein cited it is so declared; and though, as will hereafter appear, there is some little conflict as to what the tax is really levied upon, the overwhelming weight of authority supports the rule that such tax is a bonus in the nature of an excise or duty exacted by the state for the privilege granted by its laws of inheriting or succeeding to property on the death of the owner.'' (*People v. Palmer's Estate*, 25 Colo. App. 450, 139 Pac. 554; *Neilson v. Russell*, 76 N. J. L. 655, 131 Am. St. 673, 71 Atl. 286, 19 L. R. A., N. S., 887; *Kingsbury v. Chapin*, 196 Mass. 533, 82 N. E. 700, 13 Ann. Cas. 738; *State v. Probate Court*, 124 Minn. 508, Ann. Cas. 1915B, 861, 145 N. W. 390, 50 L. R. A., N. S., 262; *In re Dows' Estate*, 167 N. Y. 227, 88 Am. St. 509, 60 N. E. 439, 52 L. R. A. 533; *In re Merriam's Estate*, 141 N. Y. 479, 36 N. E. 505; *People v. Griffith*, 245 Ill. 532, 92 N. E. 313; *Frothingham v. Shaw*, 175 Mass. 59, 78 Am. St. 475, 55 N. E. 623; *Clymer v. Commonwealth*, 52 Pa. St. 185; *Eidman v. Martinez, supra; English v. Crenshaw*, 120 Tenn. 531, 127 Am. St. 1025, 110 S. W. 210, 17 L. R. A., N. S., 753; *In re Hartman's Estate*, 70 N. J. Eq. 664, 62 Atl. 560.)

Shares of stock in a corporation are very generally held to be subject to inheritance tax in the state which created the corporation, regardless of the domicile of the owner of the shares, and some highly respectable authorities hold that a state may tax the transfer under the will of a nonresident of debts due the decedent from its citizens, and that succession to tangible chattels may be taxed wherever they are found, although also taxable in the state wherein was the domicile of the owner at the time of his death. A leading case so holding is *Blackstone v. Miller*, 188 U. S. 189, 23 Sup.

Ct. 277, 47 L. ed. 439, which was a case wherein the right of the state of New York to collect a tax upon the inheritance of money deposited in a bank in that state, and belonging to the estate of a decedent who was a resident of Illinois at the time of his death, was called in question. The tax was sustained upon the theory that the transfer depended upon the law of New York. The court said: "If the transfer of the deposit necessarily depends upon and involves the law of New York for its exercise, or, in other words, if the transfer is subject to the power of the state of New York, then New York may subject the transfer to a tax. (Citing authorities.) But it is plain that the transfer does depend upon the law of New York not because of any theoretical speculation concerning the whereabouts of the debt, but because of the practical fact of its power over the person of the debtor." Further on in the opinion it is said: "The fact that two states dealing each with its own law of succession, both of which the plaintiff in error has to invoke for her rights, have taxed the right which they respectively confer, gives no cause for complaint on constitutional grounds. (Citing authorities.) The universal succession is taxed in one state, the singular succession is taxed in another. The plaintiff has to make out her right under both in order to get the money."

In this case the physical property situated in Idaho did not belong to the decedent, nor did he own an interest in it which was subject to succession under the laws of Idaho. It was the property of the Oregon Short Line Railroad Company. Decedent's property consisted of shares of capital stock in a foreign corporation, even the certificates of which were held outside the state, which shares were intangible personal property the succession to which was in no way affected by our laws, neither can we, by any stretch of the imagination, conceive of a condition arising whereby the aid of our laws might be invoked in order to reduce the inherited property to possession.

It is urged with great earnestness that because the property of the Oregon Short Line Railroad Company is in Idaho, the interest therein of decedent, at the time of his death, evidenced

by his shares of stock in the Union Pacific Railroad Company, is subject to inheritance tax here.     There is no foundation for the argument.

While the situs of property is a controlling factor when the right to levy and collect a property tax is under consideration, it must be remembered that an inheritance or succession tax is not a tax upon property, but is "a bonus in the nature of an excise or duty exacted by the state for the privilege granted by its laws of inheriting or succeeding to property on the death of the owner," and that in considering whether or not such a bonus is due, the location of the property is material only when it invests the state with jurisdiction to control the right to make the transfer by inheritance or succession.

Those contending for the exaction of this tax because decedent was, at the time of his death, the owner of stock in a foreign corporation which was the owner of stock in another foreign corporation which was the owner of property in Idaho, base their contention, whether they know it or not, upon the theory that it is a property tax and not a tax upon a right which our state has by its laws granted to make the transfer.     A theory which finds neither support nor sympathy among authorities.

Shares of stock in a corporation are personal property and descend according to the laws of the state which was the domicile of the owner at the time of his death, and the certificates of shares of corporate stock, which constitute evidence of ownership, are transferred according to the laws of the state wherein the corporation was organized.

Sec. 2747, Rev. Codes, provides: "Whenever the capital stock of any corporation is divided into shares, and certificates therefor are issued, such shares of stock are personal property, and may be transferred by indorsement by the signature of the proprietor, or his attorney, or legal representative, and delivery of the certificate; but such transfer is not valid except between the parties thereto, until the same is so entered upon the books of the corporation as to show the name of the parties by and to whom transferred, the num-

ber and designation of the shares, and the date of entry. Corporations may, by by-laws, provide that no transfer of their stock shall be made upon their books until all indebtedness to the corporation of the person in whose name the stock stands, whether for assessments, calls or otherwise, is paid.''

In 7 R. C. L. (p. 196), sec. 166, it is said:

''Nature of Property in Shares.—The tangible property of a corporation and the shares of stock therein are separate and distinct kinds of property and belong to different owners, the first being the property of the artificial person—the corporation—the latter the property of the individual owner. An assignment of corporate property does not carry the capital stock with it. Although incorporeal in their nature the shares are personal property. A certificate of stock in a land company is not title to land but a mere chose in action.'' (*Watson v. Molden,* 10 Ida. 570, 79 Pac. 503; *Lipscomb's Admr. v. Condon,* 56 W. Va. 416, 107 Am. St. 938, 49 S. E. 392, 67 L. R. A. 670; *Ankeny v. Blakley,* 44 Or. 78, 74 Pac. 485; *Tregear v. Etiwanda Water Co.,* 76 Cal. 537, 9 Am. St. 245, 18 Pac. 658; *Mattingly v. Roach,* 84 Cal. 207, 23 Pac. 1117; *Estate of Oliver,* 136 Pa. St. 43, 20 Am. St. 894, 20 Atl. 527, 9 L. R. A. 421; *Jellinik v. Huron Copper Min. Co.,* 177 U. S. 1, 20 Sup. Ct. 559, 44 L. ed. 647; *Lowndes v. Cooch,* 87 Md. 478, 39 Atl. 1045, 40 L. R. A. 380; *Mann v. Carter,* 74 N. H. 345, 68 Atl. 130, 15 L. R. A., N. S., 150; *Seward v. City of Rising Sun,* 79 Ind. 351; *McKeen v. County of Northampton,* 49 Pa. St. 519, 88 Am. Dec. 515.)

In the case last above cited Mr. Justice Agnew, delivering the opinion of the court, said: ''The interest which an owner of shares has in the stock of a corporation is personal. Whithersoever he goes it accompanies him, and when he dies his domicile governs its succession. It goes to his executor or administrator, and not to the heirs, and is carried into the inventory of his personal effects. When it is argued, therefore, that the foundry, machine-shop, and other estate of the corporation, being within the state of New Jersey, are subject wholly to the same exclusive state jurisdiction there which

we claim for this state over property within its territory, another ownership is stated and a new issue introduced. But to that property the defendant below has no title; his title being in the shares he holds, and not in the property of the corporation. No execution against him there would sell a spark of right to it, nor would his heirs at law succeed to any estate in it. Unquestionably it may be taxed as the property of the corporation in New Jersey; but the ownership there is that of the corporation, the legal entity, and not of the natural persons who own the shares of its stock.'' Further on in the opinion it is said: ''We have authorities directly upon this question deciding the principle, though upon a different species of tax—the collateral inheritance tax. (*In re Short's Estate*, 16 Pa. St. 63.) The decedent, a resident of Philadelphia, owned half a million of dollars in stocks and corporations of other states, and bonds of the state of Kentucky, and a bank deposit in New York; all were held to be subject to the collateral inheritance tax here.''

There are numerous authorities holding the rule that the situs of personal property is the domicile of the owner to be a fiction which must yield when it appears that the property is actually located in another jurisdiction. This doctrine, while sound, is subject to the limitation placed upon it by the New York court of appeals in *Matter of Enston*, 113 N. Y. 174, 21 N. E. 87, 3 L. R. A. 464, wherein it is said: ''It is a general rule of law that such property attends the owner and has its situs at his domicile. It is true that that is a fiction of the law, but it is a fiction which must prevail unless there is something in the policy of the statute or its language which shows a different legislative intent.''

It may be said with confidence that nothing appears in the policy of our statute, or its language, which shows a legislative intent to depart from the general rule, but the contrary does appear. Sec. 3095 of our Rev. Codes provides: ''If there is no law to the contrary in the place where personal property is situated, it is deemed to follow the person of its owner and is governed by the law of his domicile.''

It was said by the supreme court of California in *Re Estate of Apple, Deceased,* 66 Cal. 432, 6 Pac. 7: "While each state will deal with the property of a decedent within its jurisdiction, so far as creditors are concerned, according to its pleasure, the universal rule is that, in the absence of positive law to the contrary, distribution of the decedent's personal estate will be governed by the law of his actual domicile at the time of his death. (Redf., Wills, 905; Schouler, Exrs. & Admrs., sec. 16; 2 Greenl. Ev., secs. 668, 671." See, also, *McKeen v. County of Northampton, supra; Whitney v. Dodge,* 105 Cal. 192, 38 Pac. 636; *Douglas v. Douglas,* 22 Ida. 336, 125 Pac. 796; and *Lowndes v. Cooch, supra.*)

Sec. 1873, Rev. Codes, was construed by this court in case of *Kohny v. Dunbar,* 21 Ida. 258, Ann. Cas. 1913D, 492, 121 Pac. 544, 39 L. R. A., N. S., 1107, in which it was said: "It necessarily follows from the plain wording of the statute that this tax is laid upon the transfer of any and all property 'which shall pass by will or by the intestate laws of this state.' The vital question then to be determined is whether the one-half interest which the wife has in the community property passes to her *by will or by the intestate laws of the state.*" The court held that it did not so pass and that, therefore, the tax could not be exacted.

While the facts of this case are not identical with those of that last above cited, the same principle is involved, and the vital question therein propounded is equally pertinent here.

From the foregoing discussion the following deductions may be made: First, E. H. Harriman was, at the time of his death, a resident of the state of New York; second, the inheritance with respect to which the tax is sought to be exacted consists of stock in a foreign corporation which is the owner of the stock of another foreign corporation which is the owner of property in Idaho, and as such is personal property subject to descent and inheritance according to the laws of succession of the state of his domicile; third, our law provides for the collection of an inheritance tax only in cases where it is within the jurisdiction of the state to govern the transfer of prop-

erty passing by will or by the intestate laws of Idaho; fourth, an inheritance tax is not a property tax but is a bonus exacted by the state for the privilege granted by its laws of inheriting property on the death of its owner; fifth, the state of Idaho in this case granted no privilege of inheritance, nor has it been, nor will it be, necessary to ask its permission or invoke the aid of its laws to transfer the property in question by inheritance.

We conclude that the state of Idaho is without right to exact an inheritance tax in this case.

The writ heretofore issued is quashed and the proceeding is dismissed.   Costs are awarded to the defendants.

Budge, J., concurs.

SULLIVAN, C. J., Dissenting.—I am unable to concur in the conclusions reached by the majority of the court.    I do not think it was the intention of the legislature in the enactment of chap. 5, title 10, of the Revised Codes, entitled "Transfer Tax on Successions, Legacies and Devises," as found in secs. 1875 to 1897, inclusive, to permit any property within the state of Idaho, subject to such transfer or succession tax to escape the payment thereof, and it was not intended that any property subject to such tax should escape the payment thereof simply by protecting the title to such property behind any number of screens in the way of shareholding corporations, as might be devised by astute persons, attorneys or corporations seeking to evade the payment of such tax.

The Oregon Short Line Railroad has about 500 miles of railway in this state and its value is estimated to be worth from seventy-five millions to one hundred millions of dollars. Mrs. Harriman received an interest in that property by a transfer of the capital stock of the Union Pacific Railway Company, which was simply a holding corporation for the stock of the Oregon Short Line Railroad Company, and she ought not to be permitted to escape the inheritance tax any more than should a corporation which owned a large amount of real estate in this state and organized a corporation out-

side of the state to hold all of the stock of the corporation own-ing the property in this state. Where corporations keep their property in such shape that the interest of a deceased person in such property may be transferred to his heirs by will, de-vise or otherwise, or by simply an assignment of the capital stock of the holding corporation, it ought not by a technical or other construction of our statute be permitted to escape such tax.

This proceeding was brought under sec. 1890 of said trans-fer tax law, which provides, among other things, as follows:

"If it shall appear to the probate court, or judge thereof, that any tax accruing under this chapter has not been paid according to law, it shall issue a citation, citing the persons known to own any interest in or part of the property liable to the tax, or any person or corporation liable under the law for the payment of said tax, to appear before the court on a day certain, not more than ten weeks after the date of such citation, and show cause why said tax should not be paid."

Under the provisions of said section, the determination of an inheritance tax may arise either in a matter of probate or in the settlement of the estate of a deceased person, and I think in either of those cases the constitutional authority of the legislature to confer jurisdiction on the probate court is beyond question.

When a person dies his estate cannot be said to be "settled" until all debts and other obligations owing to the state have been paid. So far as the state of Idaho is concerned, the set-tlement of the Harriman estate cannot be regarded as com-plete until it has been made to pay any transfer tax which may be due this state under the provisions of said law.

The authority of the legislature in regard to the rights of the state in questions of this character is very well stated in the case of *Greves v. Shaw,* 173 Mass. 205, 53 N. E. 372, where it is said:

"It cannot be supposed that the legislature intended that the question whether the succession to property of nonresi-dents should be taxed or not should depend in each case upon the ability or inability of the foreign executor to obtain pos-

session of it in this commonwealth without a suit. It must be held that the provisions of the law imposing the tax are to be carried out, and that the right and title of the foreign executor or administrator are subject to the prior right of the commonwealth to have property so administered by officers of its courts as to produce the tax for which it is liable. . . . . Since the enactment of St. 1891, c. 425, persons claiming a succession to property in this commonwealth under nonresident owners must hold their right subject to the prior right of the commonwealth to have the property administered here, in order that taxes must be paid upon the succession.''

If a tax is owing to this state from the Harriman estate, it was the duty of his administratrix or executrix to comply with the laws of this state in the payment of any transfer tax due, even if it required her to offer the Harriman will for probate in this jurisdiction and to pay said tax before proceeding to settle said estate. Because she failed to do this, it can in no wise affect the right of the state to demand the payment of the tax. Certain sections of said law provide the duty of the probate court under the different circumstances which may arise with reference to probate proceedings or the settlement of estates. Sec. 1886, Rev. Codes, provides, among other things, as follows:

''When the value of any inheritance, devise, bequest or other interest subject to the payment of said tax is uncertain, the probate court in which the probate proceedings are pending, on the application of any interested party, or upon its own motion, shall appoint some competent person as appraiser,'' etc.

This paragraph undoubtedly refers to cases arising within the state of Idaho where the probate of wills is a necessity incident to the administration of estates, or to such cases where the administration of an estate occurs in some other state, but the will is offered for probate in this state in order to free the estate in question from such obligations as may arise under our statutes. In cases where the will of a resident decedent is not probated and the transfer tax is not paid, or where such a tax arises on the transfer of property of a

nonresident decedent, the probate court is given authority under said sec. 1890 to issue a citation, citing the persons known to own any interest in or part of the property liable to the tax, or any person or corporation liable under the law for the payment of said tax, to appear before the court on a certain day, not more than ten weeks after the date of such citation, and show cause why said tax should not be paid. It was under the provisions of this section that this proceeding was begun, and it was made to appear by the complaint or petition filed in this proceeding that the interest of the Harriman estate in the Oregon Short Line Railroad located within this state was subject to such tax. When that was made to appear to the probate court, it was its duty to appoint an appraiser to ascertain the value of the Harriman interests in such property.

We hear considerable about the strict construction of such statutes. Some appear to overlook sec. 4 of the Rev. Codes, which provides that the laws of this state "respecting the subjects to which they relate, and their provisions and all proceedings under them are to be liberally construed, with a view to effect their objects and to promote justice." So our statutes in regard to the transfer or succession tax should be so construed as to make all property within the state liable therefor subject to the payment of such tax.

It was not intended that the payment of said transfer tax should be limited to proceedings of a probate court for the purpose of proving a will or the settlement of an estate and thus permit a great deal of property within the state subject to such transfer tax to escape the payment thereof by subterfuge or conditions such as are shown in this case. Said sec. 1890 provides that "If it shall appear to the probate court, or judge thereof, that any tax accruing under this chapter has not been paid according to law, it shall issue a citation," and in order to determine whether such tax should be paid the probate court has the authority under sec. 1886 to appoint an appraiser to ascertain the value of such property. This is for the purpose of determining whether or not such tax should be paid; and if it should, to determine the amount.

If specific authority is not contained in said sec. 1890 for the appointment of an appraiser, such specific authority is not necessary, for the reason that sec. 3925, Rev. Codes, provides that "When jurisdiction is, by this code or by any other statute, conferred on a court or judicial officer all the means necessary to carry it into effect are also given; and in the exercise of the jurisdiction if the course of proceedings be not specially pointed out by this code, or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code."

The majority of the court hold that it was not the intention of the legislature to attempt to provide for the appointment of an appraiser under the circumstances disclosed by this application, but it authorizes such appointment by the probate court only in cases where the proceedings to probate an estate are pending. This narrow construction placed upon said statute would permit all property held behind the screen of other corporations to escape such transfer tax.

In the fourth paragraph of the syllabus of the decision of the majority, it is said: "Since no proceeding is pending to probate the estate of the late E. H. Harriman, and since he does not appear to have left an estate in Idaho subject to settlement under our laws," etc., that this case does not come within the prescribed limits of the jurisdiction of the probate court as defined by sec. 21, art. 5, of the state constitution.

To my mind, it clearly appears in this proceeding, from the facts alleged in the petition, that the Harriman estate has a large interest in the Oregon Short Line Railroad situated in this state, and simply because Mrs. Harriman declined and refused to have the will of her late husband probated in this state, her interest in the Oregon Short Line, transferred to her on the death of her husband, is thus permitted to escape the inheritance tax. I do not think that the inheritance tax law of this state was intended to compel the payment of such a tax only on the estates that are probated under the laws of this state and to permit all other transfers of the estates of deceased persons to escape the payment of such tax. Such a construction would make said act special or class legislation,

and would apply only to residents of the state and estates probated in this state.

It is clear to me that E. H. Harriman, prior to his death, was the actual owner of an equitable interest in the property of the Oregon Short Line Railroad Company. The shareholder of stock in a corporation is certainly an owner of the interest in the property standing in the name of the corporation. This was held in the case of *People of New York ex rel. Hatch v. Reardon,* 204 U. S. 152, 162, 27 Sup. Ct. 188, 51 L. ed. 415, 423, 9 Ann. Cas. 736, where the court said:

"It is said that the property sold was not within the state. The immediate object of sale was the certificate of stock present in New York. That document was more than evidence, it was a constituent of title. No doubt, in a more remote sense, the object was the membership or share which the certificate conferred or made attainable. More remotely still, it was an interest in the property of the corporation, which might be in other states than either the corporation or the certificate of stock."

Practically the same is held in *Mann v. Carter,* 74 N. H., at p. 348, 68 Atl. 130, 15 L. R. A., N. S., 150. The question before that court was whether or not a deposit of money represented by a certificate of deposit could be held to be "property within the state." Among other things the court said:

"But her proprietary right to the property would not disappear if the partners became incorporated and carried on the business under a corporate name. The technical change in the form of ownership and management would not diminish her substantial rights as a beneficial owner of the property."

It may be admitted that there is considerable weight of authority on the side of the majority opinion, to the effect that the stock in a foreign corporation is itself the property which passes by will or succession to an heir or legatee, and not the physical property of the corporation where it is actually located. But very slight investigation will disclose potent and significant reasons for the prevalence of this doctrine in certain states from which such authorities are cited. In the states of New York and New Jersey, for instance, enormous

aggregations of capital are held in the form of stock certificates in railroad and industrial corporations, the physical property of which is scattered all over the United States.

By upholding inheritance taxes on the stock as distinct from the tangible property of the corporation, these states are enabled in effect to levy tribute by virtue of their taxing powers on property located in the states of Idaho, Kansas or North Dakota, as the case may be, and thereby secure a great and wholly inequitable fiscal advantage over the taxing powers of the states in which the property is actually situated; since it will hardly be contended that the stock would be worth more than the paper on which it is written without the existence of the physical property and franchise which is back of it.

The deplorable results of the development of this doctrine are manifest in constant clashes between the inheritance laws of different states, and the logical outcome of the doctrine leads to the absurd and inequitable position which is approved by my associates, to the effect that the same corporate stock or other personal property may actually be twice mulcted in inheritance taxes by different states and such double taxation be held valid and constitutional. If the imposition of such a tax were limited to the actual physical property of which stock is only the evidence, the tax could be collected only once, and it could be collected only in the state where it is situated and which affords such property the protection of its laws. This ·duplication of tax burdens upon the devolution of the same property has become so serious by reason of conflicting state inheritance laws, and the abuse has grown to such pro·· portions, that the attention of economists and authorities on taxation has everywhere been attracted to it, and many suggestions have been made for the substitution of a more equitable system, which it should certainly be the endeavor of a court of justice to encourage so far as consistent with sound legal principles.

We cannot reasonably suppose that the legislature intended that the question whether the transfer or succession of property of nonresidents should be taxed or not should depend in

each case upon the ability or inability of the foreign executor to obtain possession of it in this commonwealth without a suit or proceeding in the probate court.

I think this court ought to hold that the provisions of the law imposing the tax should be carried out and that the right or title of the foreign heir, executor or administrator is subject to the prior right of this state, and that nonresident heirs of the owners of property in this state hold their right to such property subject to the payment of such tax to this state.

The writ ought to issue directing the probate court to appoint an appraiser.

---

(April 4, 1916.)

