(No. 6454. July 9, 1937.)

HOWARD S. WHITNEY, Appellant, v. ARTHUR W. RANDALL, Respondent.

[70 Pac. (2d) 384.]

Guy W. Wolfe and Weldon Schimke, for Appellant.

J. H. Felton, for Respondent.

A. L. Morgan, *Amicus Curiae.*

AILSHIE, J.—October 13, 1936, appellant entered into a contract with respondent for the purchase of certain lots owned by him in the city of Moscow. The contract was in the form of an escrow agreement and a deed was signed and placed in escrow therewith. The title to such lots was clear but it was thought that some uncertainty existed as to the mental capacity of respondent to convey, by reason of rumored incompetency.

October 14, 1936, appellant's complaint and respondent's answer were verified before the same notary public. October 15th the complaint was filed and alleged as follows:

"I.

"That heretofore, and on the 13th day of October, 1936, the plaintiff and defendant entered into a certain contract and agreement, a copy of which is attached hereto, marked 'Exhibit A,' and made a part hereof by reference;

"II

"That there exists an uncertainty as to the ability and capacity of the defendant to contract, and that this action is

brought to quiet from the said title such uncertainty, and under Chapter 70, 1933, Session Laws of Idaho, denominated, 'The Uniform Declaratory Judgment Act';

"III.

"That plaintiff is expending a large sum of money for the purchase of the said lands and premises, as in the said contract provided, and intends to spend further large sums of money in placing a building upon the said lands and premises, provided that both parties are mutually bound thereby; and the question submitted here is whether or not both parties are mutually bound by reason of such contract;

"IV.

"That at certain times in the past the plaintiff is informed and believes, and upon information and belief alleges, that the defendant, by reason of his indulgence in alcohol has been incompetent mentally, and that at certain times by reason of such incompetency he has been confined in state institutions, after summary hearings, as a dangerously insane person, but that at the present time and for a long time past the defendant is not, and has not been, so detained, and has been caring for his own property and has been living and acting as an ordinarily sane and competent individual;

"V.

"That the price paid for the said lands and premises is a just, reasonable and equitable price, and that the contract entered into is a reasonable and equitable contract, fair to both parties, and that the terms thereof are just, reasonable, and equitable, and that plaintiff is the owner of an equity in and to the said property according to the terms and conditions of said agreement;

"VI.

"That a warranty deed has been made by the said defendant, according to the terms and conditions of the said contract, to be placed in escrow as therein provided, and that the terms and conditions of the contract have been otherwise complied with."

On the same date J. H. Felton, attorney for respondent herein, filed a petition entitled in the same case, alleging that the defendant Randall was "sane and of sufficient capacity

to come into this Court as a party and that such Arthur W. Randall has requested petitioner to represent him,'' and asked the court for an order permitting him to represent the defendant in the action. Upon this petition the court, on the same date and without further hearing, signed an order as follows:

''It is hereby found and determined that Arthur W. Randall is sane and of sufficient capacity to be a defendant in this Court;

''IT IS HEREBY ORDERED, ADJUDGED AND DECREED that J. H. Felton be allowed to represent the said Arthur W. Randall as attorney and to file for him and in his name, stead and behalf without guardian *ad litem* or other representation an answer in the present suit.''

Thereupon, and on the same date, defendant, through his attorney, Mr. Felton, answered and alleged:

''I.

''That on the 13th day of October, 1936, the date of the contract mentioned in plaintiff's complaint, the said defendant was examined by J. Harry Einhouse, a regularly licensed and practicing physician, doctor and surgeon, at Moscow, in the County of Latah, State of Idaho, being especially examined as to his mental condition on that day, was declared sane and of sufficient capacity to appear in this court and to contract as in the complaint alleged.

''II.

''Denies that there is any uncertainty as to his capacity to contract, and alleges that the contract described in plaintiff's complaint was entered into and that both plaintiff and defendant are bound thereby;

''III.

''Alleges that for a long number of years he has desired to sell the said lands and premises; that he believes this contract to be just and equitable and for his benefit, and concurs in plaintiff's prayer for declaratory relief as set forth in plaintiff's complaint, and that the decree of this Court issue accordingly.''

The foregoing is the whole of defendant's answer. Thereupon and on the same date, both parties being present and

represented by counsel, Dr. Einhouse and J. H. Decker, a neighbor of defendant, were called as witnesses and testified with reference to their observations and opinion as to defendant's sanity and competency; and thereupon the trial court made findings of fact as follows:

"That on the 13 day of October, 1936, plaintiff and defendant entered into a certain contract and agreement, a copy of which is attached to the complaint and marked 'Exhibit A';

"That at the time of entering into the said contract both parties were competent, understood the said contract, and that such contract was fairly made;

"That in pursuance to the said contract a deed was made as in such contract stated, to be delivered as therein stated."

Upon these findings a decree was entered quieting plaintiff's title to the property involved in accordance with the terms of the contract entered into, declaring the contract "to be mutually binding and enforceable upon both parties therein." Thereafter and on the 8th day of January, 1937, the judge, on his own motion, made and entered the following order, from which this appeal has been prosecuted:

"WHEREAS, In the above entitled action this Court having on the 15th day of October, 1936, made and entered Findings of Fact and Conclusions of Law finding that both parties were competent, understood a certain contract and that said contract was fairly made in accordance with the complaint in said cause seeking a declaratory judgment, and

"WHEREAS, The Judge of the above entitled court inadvertently and hastily, upon its being represented that the said matter was simply a default judgment for the purpose of quieting title to certain lands and premises having entered a decree without its having at the time been advised and understood that the said pleadings were intended for the purpose of securing a declaratory judgment of restoration to sanity and competency of the defendant;

"And it now appearing to the Court that the matter of declaration of restoration to sanity or competency is a matter solely for determination by the Probate court under the laws

of Idaho, and findings that this court had no jurisdiction of the subject matter of the action:

"NOW, THEREFORE, Upon the Court's own motion, IT IS HEREBY ORDERED That the said decree heretofore entered in said action on the 15th day of October, 1936, be, and the same is hereby set aside and held for naught."

The plaintiff appealed from the order and both plaintiff and defendant have joined in the same brief in support of the appeal; and both contend that the order made by the trial judge, setting aside and vacating the judgment, was without jurisdiction and is void. In view of the fact that the court had vacated the judgment on his own motion, and that both plaintiff and defendant were contending that the court's order was void, this court concluded that the question as to the trial court's jurisdiction should be briefed and presented by an attorney not in the employ of either appellant or respondent; and accordingly appointed Mr. A. L. Morgan, an attorney of this court, to appear as *amicus curiae*. Mr. Morgan has accordingly briefed the question and argued the case in this court, in support of the action of the trial judge.

Some controversy has been indulged as to whether this is an action to quiet title or an action to obtain a declaratory judgment under chapter 70 of the 1933 Session Laws (1933 Sess. Laws, p. 113). Whether the present action be one to quiet title, or an action for declaratory judgment, on contract for sale of the land involved in the action, can make no difference in the conclusion which must be reached, for the reason that counsel for appellant, counsel for respondent and *amicus curiae* all agree that the question involved here is one of jurisdiction.

Appellant and respondent both claim that the trial court had jurisdiction of the original action and jurisdiction to enter the judgment which he entered in the first instance; while *amicus curiae* contends that the trial court had no jurisdiction to enter the original judgment and that the same was void on its face; and that the court had the power and authority to vacate such judgment at any time. (*Baldwin v. Anderson*, 51 Ida. 614, 8 Pac. (2d) 461, and cases cited.) These various and separate contentions render it necessary

for us to analyze the nature and character of the action and when the court's jurisdiction attached and when jurisdiction was lost. In the first place the district court is vested by the constitution and statute with the jurisdiction to ᵥ hear and determine actions to quiet title to real property. (Const., art. 5, sec. 20; secs. 1–705 and 9–401, I. C. A.)

█ The Declaratory Judgment Act (chap. 70, 1933 Sess. Laws) vests the jurisdiction in the district court as follows:

"Sec. 2. Any person interested under a deed, will, written contract or other writings constituting a contract or any oral contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

"Sec. 3. A contract may be construed either before or after there has been a breach thereof."

The court also had jurisdiction of the persons of the plaintiff and defendant because each appeared, both in person and by his attorney in open court. We must conclude, therefore, that the court had jurisdiction of the subject matter and of the persons of the litigants.

The next inquiry, which necessarily arises, is: Did the parties litigant submit to the court any adversary or justiciable controversy? This latter inquiry involves an analysis of the pleadings and the issues, if any, submitted thereby.

██ The trial court appears to have been moved to enter his order vacating the judgment in this case upon the assumption that his original judgment amounted to a "restoration to sanity or competency" of the defendant Randall; and that he had no jurisdiction to do so since such jurisdiction is vested in the probate court. His conclusion as to the jurisdiction of the probate court was correct but he misapprehended the effect of the judgment he had entered on October 15th, quieting the plaintiff's title to the tract of land covered by the contract and involved in the litigation. It is true that in his findings of fact he found "that at the time of entering into the said contract both parties were competent,

understood the said contract, and that such contract was fairly made." That, however, was incidental to his jurisdiction and a proper finding to make, in determining the *validity and effect of the contract and quieting the title conveyed thereby*. Nevertheless, we think the order vacating the judgment must be sustained upon other grounds; namely, that the complaint utterly failed to present any adversary or justiciable issue. (*Baldwin v. Anderson, supra*.) Of this we will speak later.

The circumstance, that one of the parties to an action, involving the validity or construction of a contract, claims that either he or his adversary was mentally incompetent to contract at the time of the alleged execution of the contract, does not affect or oust the jurisdiction of a district court to hear and determine such fact in order to reach a correct conclusion and judgment in the case. The determination of that issue is frequently necessary in adjudicating rights and obligations arising under contracts; and the power and authority to do so rests in the district court, under its general original jurisdiction "in all cases both at law and in equity." (Sec. 20, art. 5, Const.) In such cases the court is not adjudicating the sanity or insanity, competency or incompetency of the party for purposes of commitment, treatment, restraint or guardianship, jurisdiction of which is vested in the probate court (sec. 21, art. 5, Const.) ; *Dewey v. Schreiber Implement Co.*, 12 Ida. 280, 85 Pac. 921; *Short v. Thompson*, 56 Ida. 361, 55 Pac. (2d) 163; *Penn Mut. Life Ins. Co. v. Beauchamp*, 57 Ida. 530, 66 Pac. (2d) 1020) ; but is simply ascertaining his capacity to contract in the particular transaction involved, and incidental to the determination as to whether or not a valid and binding contract has been executed by persons competent at the time to contract. The character and class of proof admissible in such cases is governed by the legal status of the party whose competency is in question; that is, whether he has ever been committed or declared incompetent and, if so, whether by a summary proceeding, or by a regular adjudication of insanity. (Sec. 31–108, I. C. A. ; *Fleming v. Bithell*, 56 Ida. 261, 52 Pac. (2d) 1099.) The proceeding here under review did not involve a sanity or

competency hearing or adjudication. If it presented any issue at all, it was simply the validity of the contract and the necessary incidental question as to the competency of defendant to contract at the particular time he executed the specific contract involved. This brings us to the question as to the sufficiency of the complaint as tendering an issue.

 Here no disputed issue, no adversary controversy was tendered. Plaintiff alleged that the contract was valid and binding and that defendant was competent to make the contract. Defendant admitted and asserted the same facts. It is true that plaintiff alleged: ''That there exists an uncertainty as to the ability and capacity of the defendant to contract, and that this action is brought ·to quiet from the said title such uncertainty, and under Chapter 70, 1933 Session Laws of Idaho, denominated, 'The Uniform Declaratory Judgment Act.' '' But it is nowhere alleged that defendant denies or repudiates the contract or claims that he was incompetent to enter into the contract at the time it was executed, nor is it alleged that any member of his family, presumptive heir, or relative, who might be legally liable for his support, in case of his insanity and indigence, has questioned or doubted his competency or the validity of the contract.

 There must be adverse parties to an action or proceeding, whether it be prosecuted under the statute to quiet title or under the Declaratory Judgment Act. Section 11 of the Declaratory Judgment Act provides:

''When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.''

Here the purchaser of the property, as vendee named in the contract, is the only defendant.

In *State v. State Board of Education,* 56 Ida. 210, 52 Pac. (2d) 141, we had occasion to consider a question presented under the Declaratory Judgment Act and said:

''The Declaratory Judgment Act (chap. 70, 1933 Sess. Laws) contemplates some specific adversary question or contention based on an existing state of facts, out of which the alleged 'rights, status and other legal relations' arise, upon

which the court may predicate a judgment 'either affirmative or negative in form and effect.' (Sec. 1 of Declaratory Act.)

"The questioned 'right' or 'status' may invoke either remedial or preventive relief; it may relate to a right that has either been breached or is only yet in dispute or a status undisturbed but threatened or endangered; but, in either or any event, it must involve actual and existing facts." (Citing cases.)

We there held that in order to obtain a declaratory judgment under this act, some specific adversary question must be presented. There must be a justiciable issue presented. No judicial declaration is necessary or seemly where no difference or threat, present or prospective, exists between the parties to the action or proceeding. The authorities under the Uniform Declaratory Judgment Act generally sustain this view of the scope and purpose of the act. (*Jefferson County v. Johnson,* 232 Ala. 406, 168 So. 450; *State v. Dammann,* 220 Wis. 17, 264 N. W. 627, 103 A. L. R. 1089; *County Board of Education, etc., v. Borgen,* 192 Minn. 512, 257 N. W. 92; *Stewart v. Herten,* 125 Neb. 210, 249 N. W. 552; *Burton v. Durham R. & I. Co.,* 188 N. C. 473, 125 S. E. 3.)

The order vacating the judgment is affirmed and the cause is remanded with direction to permit the plaintiff to amend his complaint, if he desires to do so. Appellant will be required to pay respondent's costs and also to pay *amicus curiae* the costs taxable for printing his brief.

Budge, J., concurs.

HOLDEN, J., Concurring Specially.—In this case, it does not appear that the plaintiff was uncertain as to the mental capacity of the defendant to contract, nor does it appear that the defendant himself entertained any doubt as to his mental capacity in that respect, nor does it appear that there was any uncertainty between the parties themselves as to the validity of the contract they signed — both plaintiff and defendant contend that the defendant was mentally competent to contract and that their contract is, therefore, valid. Consequently, they did not bring themselves within the provisions of the Uniform Declaratory Judgment Act. They did not

require relief from uncertainty as to the mental capacity of the defendant to contract, because they were agreed on that. The writer has expressed his views as to the purposes of that statute in *State v. State Board of Education*, 56 Ida. 210, 218, 52 Pac. (2d) 141, to which views he adheres.

Morgan, C. J., and Givens, J., deeming themselves disqualified, did not sit at the hearing nor participate in the decision in this case.